THE O'MARA LAW FIRM, P.C.
DAVID C. O'MARA, ESQ.
Nevada Bar No. 08599
311 East Liberty Street
Reno, Nevada 89501
Telephone:     775-323-1321
775-323-4082 (fax)
david@omaralaw.net

Dan Backer*
POLITICAL.LAW PLLC
441 N. Lee St., Suite 300
Alexandria, VA 22314
(202) 210-5431
dan@political.law
Admitted Pro Hac Vice

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MAKE LIBERTY WIN,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>BARBARA K. CEGAVSKE, in her official capacity as SECRETARY OF STATE OF NEVADA,<br><br>　　　　　　Defendant(s). | Case No. 3:20-cv-00592-RCJ-WGC<br><br>**PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION** |

This Court should grant Plaintiff Make Liberty Win's ("Liberty") motion for a preliminary injunction. As an initial matter, the Secretary concedes at least one of the challenged statutes, Nev. Rev. Stat. § 294A.330 (the Reelect Prohibition) is constitutionally defective and should be enjoined. The primary dispute concerns how broad the preliminary injunction should be, and whether it should include the other provision cited in Defendant's Threatening Letter to Plaintiff— Nev. Rev. Stat. § 294A.340 (the Incumbency Prohibition). Unfortunately, the Secretary's memorandum betrays deep confusion, uncertainty, and misunderstanding—if not outright misrepresentation—about the statutory scheme she is charged with enforcing. She also raises a frivolous challenge to Liberty's standing, despite expressly threatening to fine Liberty unless it

ceased engaging in its pure political speech. The one thing the Secretary's memorandum lacks, however, is a substantive defense of these facially unconstitutional provisions.

## ARGUMENT

### I. CLARIFICATION OF THE CHALLENGED STATUTES

The Secretary's memorandum obfuscates concerning both the contents of the challenged legal provisions, as well as the enforcement mechanisms for them.

#### A. The Incumbency Prohibition Bars Use of the Term "Reelect"

First, the Secretary contends the Incumbency Prohibition "instructs candidate and their advocates not to use words **other than 'reelect'** if those words "impl[y] that the candidate is the incumbent in office." Nevada Secretary of State's Partial Opposition to Motion for Preliminary Injunction at 2 (hereafter, "Def. Opp.") (quoting Nev. Rev. Stat. § 294A.340) (emphasis added). The Secretary later reiterates, "By its plain terms, [the Incumbency Prohibition] does not apply to candidates and their advocates when they use the term 'reelect' in campaign and advertising materials." *Id*. The plain text of the statute contains no such limitation, however, and the Secretary cites to no caselaw or regulations predating this litigation which impose any such limitation.

Contrary to the Secretary's baseless fabrication, the Incumbency Prohibition broadly states, "A person shall not use the name of a candidate in a way that implies that the candidate is the incumbent in office in any material, statement or publication supporting the election of a candidate," unless they meet certain statutory criteria, such as being "qualified to use the term 'reelect' pursuant to [the Reelect Prohibition]." Nev. Rev. Stat. § 294A.340(1). In other words, the Incumbency Prohibition prohibits the use of **any** language—including use of the term "reelect"— in materials supporting a candidate which "impl[y]" the candidate is the incumbent. *Id*. Thus, both the Reelect Prohibition, Nev. Rev. Stat. § 294A.330, as well as the Incumbency Prohibition, *id*. § 294A.340, prohibit a political committee from using the term "reelect" in campaign literature supporting a candidate who does not satisfy Nevada's strict statutory requirements. This interpretation is bolstered by the fact the Secretary's Threatening Letter to Liberty expressly cited the Incumbency Prohibition in its subject line. *See* Compl. Exh. 2, at 1 ("Use of the Term 'Re-

Elect' in campaign, NRS 294A.330, NRS 294A.340").[1] The Secretary's attempt to unilaterally amend the Incumbency Prohibition in the face of litigation fails.

The Secretary, feigning bewilderment, contends, "How [Liberty] might possibly run afoul of [the Incumbency Prohibition] in the future remains a mystery." Def. Opp. at 2. No mystery here. Liberty has violated, and will continue to violate, both the Reelect Prohibition and Incumbency Prohibition by distributing literature and having contractors make oral statements urging voters to "re-elect" Jill Dickman, despite the fact Dickman does not satisfy the requirements set forth in either statute. *See* Greiss Decl. ¶¶ 7, 9-10, 13-15, *see also* Greiss Decl. ¶ 5.

### B. People Who Violate the Reelect Prohibition and Incumbency Prohibition Are Subject to Potentially Substantial Civil Fines

Second, the Secretary cagily refuses to forthrightly acknowledge whether any enforcement mechanisms exist for the Reelect Prohibition or Incumbency Prohibition. She reluctantly acknowledges, as she must, the Threatening Letter stated, "Ms. Jill Dickman et al. ***must*** remove the term 're-elect' from all her campaign signage, ***effective immediately***. Failure to correct this issue ***will result in a fine*** being assessed." Threatening Letter at 2 (emphasis added). Immediately after this lawsuit was filed, the Secretary doubled down on this position, sending an e-mail to Shana Weir, Liberty's registered agent in Nevada, demanding confirmation Liberty had ceased the political speech at issue. On October 20, 2020, Compliance Investigator Sandra A. Edwards of the Secretary of State's office e-mailed Weir stating, "Please provide evidence directly to me that the use of the word 're-elect' has been removed or covered up on all door hangers and literature no later than October 22, 2020." A true and complete copy of this e-mail is attached to this Reply Brief as Exhibit 1 (hereafter, "Follow-Up E-mail").

---

[1] The Secretary also falsely asserts Liberty brought both facial and as-applied challenges only to the Reelect Prohibition, while pursuing only facial challenges against the Incumbency Prohibition. To the contrary, Liberty brought facial and as-applied challenges to both provisions. Count VI of the Complaint contains Liberty's as-applied challenge to the Incumbency Prohibition. *See* Compl. ¶¶ 106-19.

Only now that the Secretary has been called to account in federal court for enforcing blatantly unconstitutional laws does her aggression dissipate into timorous indecision. She points out the Threatening Letter "does not identify the authority by which such a fine might be assessed." Def. Opp. at 3. She then disingenuously asserts, "[N]or do relevant statutes and regulations identify any authority by which a fine might be assessed." *Id*. Immediately abandoning this claim, however, the Secretary immediately goes on to add, "The only provision of law that hints at a possible fine or penalty is Nev. Rev. Stat. § 294A.410, which generally authorizes enforcement of chapter 294A . . . through civil court proceedings." But the Secretary then shifts gears yet again to suggest "it is not clear . . . whether there is even a legal mechanism for enforcing [the Reelect Prohibition] and [the Incumbency Prohibition]." *Id*. at 3. Skirting the bounds of Fed. R. Civ. P. 11, she has the temerity to conclude by suggesting, "Compliance is arguably voluntary." *Id*.; *see also id*. (hypothesizing the Reelect Prohibition and Incumbency Prohibition "appear to set forth aspirational goals for candidates and their advocates").

The Secretary's apparently utter confusion over the Reelect Prohibition and Incumbency Prohibition may be more understandable if she were not the "Chief Officer of Elections" for the state, "responsible for the execution and enforcement of the provisions of title 24 of NRS." Nev. Rev. Stat. § 293.124(1). The Secretary's blatantly unwillingness to forthrightly admit—or even present a coherent position on—whether the Reelect Prohibition and Incumbency Prohibition have any enforcement mechanisms is shameful. Section 294A.420(2)—which the Secretary fails to acknowledge, *cf*. Nev. R. Prof. Cond. 3(a)(1)-(2)—provides: "Except as otherwise provided in this section, a candidate, person, organization, committee, political party or nonprofit corporation that violates an applicable provision of this chapter is subject to a civil penalty of not more than $10,000 for each violation and payment of court costs and attorney's fees." Nev. Rev. Stat. § 294A.420(2). The Reelect Prohibition and Incumbency Prohibition are located within the same chapter— Chapter 294A—of the Nevada Revised Statutes as § 294A.420(2). Moreover, this penalty is "cumulative," and exists "in addition to any other remedies and penalties that may exist at law or in equity, including, without limitation, any criminal penalty." *Id*. § 294A.420(7).

The Secretary's willingness to embrace the possibility that she lacks any "legal mechanism for enforcing" the Reelect Prohibition and Incumbency Prohibition, and to suggest "[c]ompliance is arguably voluntary," is even more shocking in the context of this case. It is undisputed the Secretary sent the Threatening Letter, which stated Liberty's "[f]ailure" to cease its pure political speech "immediately. . . **will result in a fine** being assessed." Threatening Letter at 2 (emphasis added). The Secretary disingenuously states, "[I]t is unfortunate that [Liberty] felt threatened by [the Secretary's] letter." Def. Opp. at 3; *see also id.* (claiming "it is a virtual certainty that [Liberty] will suffer no adverse legal consequences as the result" of violating the Reelect Prohibition and Incumbency Prohibition"). The reason Liberty felt threatened, however, is because the Secretary ***expressly threatened*** Liberty. Indeed, that's why we called it the "Threatening Letter." And then to underscore the point, the Secretary followed up even after this lawsuit was filed to demand proof Liberty had complied with her demands by ceasing its desired political speech. *See* Ex. 1.

If the Secretary is acknowledging that an agency employee acting under color of state law issued a letter on agency letterhead, in her name, attempting to chill constitutionally protected political speech with the threat of non-existent fines, this case could quickly evolve into a class-action lawsuit for punitive damages.[2] *See* 42 U.S.C. § 1983. Indeed, the Secretary's reckless indifference to political speech, constitutional rights, and apparently even the most fundamental precepts of the rule of law emphatically underscore the urgent need for broad injunctive relief. Enforcing an unconstitutional law is bad enough. Fabricating non-existent fines to enforce an unconstitutional law and attack constitutionally protected political speech is beyond the pale.

Indeed, if the Secretary wishes to maintain this implausible façade and feign impotence to enforce these provisions, this Court should hold her to those representations and eliminate any chill to First Amendment rights by entering an immediate declaratory judgment and permanent

---

[2] Liberty would make an excellent class representative to enforce the rights of all people and entities who were falsely threatened with fabricated fines by agents of the Secretary acting under color of state law. Liberty would be entitled to full discovery into the extent to which this was an officially authorized policy or practice in the Secretary of State's office. It will likewise be entitled to request a list of all laws in the Nevada Election Code the Secretary deems purely "aspirational," and for which compliance is purely "voluntary."

injunction enjoining her from ever enforcing the Reelect Prohibition or Incumbency Prohibition against anyone, due to the absence of any enforcement mechanism. *See* Fed. R. Civ. P. 15(a), 56(a), 65(a)(2). The most reasonable reading of Nevada law, however, is that the Reelect Prohibition and Incumbency Prohibition are enforceable through civil fines, just as the Secretary threatened.

## II. ALL OF LIBERTY'S CLAIMS ARE JUSTICIABLE

### A. Liberty Has Standing to Pursue Both Facial and As-Applied Challenges to the Reelect Prohibition and Incumbency Prohibition

Next, the Secretary contends Liberty lacks standing to bring a facial challenge to the Reelect Prohibition and Incumbency Prohibition. Def. Opp. at 5 ("[Liberty] does not have standing to pursue a facial challenge . . . ."). Rather, she suggests, Liberty has standing to bring only an as-applied challenge to the Reelect Prohibition. *Id*. at 4 (arguing Liberty has standing to challenge "the application of [the Reelect Prohibition] to the specific facts of this case").

As an initial matter, the Secretary's position is legally incoherent. It is impossible to have standing to bring an as-applied challenge to a statute, while lacking standing to bring a facial challenge. The whole premise of a facial challenge is that a statute presents an invalid rule of law that cannot be applied to anyone. *See City of Los Angeles v. Patel*, 576 U.S. 409, 418 (2015). And the Ninth Circuit has expressly recognized, "[A] plaintiff has standing to vindicate his First Amendment rights through a facial challenge when he argue[s] that [a legal provision] . . . impermissibly restricts a protected activity, **and such facial challenges may be paired with as-applied challenges**." *Real v. City of Long Beach*, 852 F.3d 929, 933 (9th Cir. 2017) (emphasis added and quotation marks omitted). The Secretary cites no authority for the remarkable—and legally incorrect—proposition that Liberty's valid as-applied challenge somehow deprives it of standing to pursue its equally valid facial challenge to the statute. *Cf*. Fed. R. Civ. P. 8(a)(3) (authorizing pleading in the alternative).

And Liberty's standing to challenge the Reelect Prohibition and Incumbency Prohibition is firm. Standing—as distinguished from other justiciability requirements—is determined at the time the Complaint was filed. *See Davis v. FEC*, 554 U.S. 724, 734 (2008) ("[T]he standing inquiry remains focused on whether the party invoking jurisdiction had the

requisite stake in the outcome when the suit was filed."); *see also Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1120 (9th Cir. 2020). "[A] plaintiff satisfies the injury-in-fact requirement where he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder . . . ." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quotation marks omitted). And the Ninth Circuit has recognized a plaintiff has standing specifically to bring a facial challenge where it "see[s] to vindicate [its] own constitutional rights" on the grounds a challenged legal provision "impermissibly restricts a protected activity" in which it is engaging. *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1033-34 (9th Cir. 2006);

The undisputed evidence establishes Plaintiff violated the Reelect Prohibition and Incumbency Prohibition by distributing literature supporting Jane Dickman which stated, "RE-ELECT JILL DICKMAN FOR STATE ASSEMBLY." Greiss Decl., ¶ 9, even though she did not meet either statute's criteria for such messages. Moreover, Liberty has demonstrated an intent to continue violating these provisions in the future. *Id*. ¶¶ 14-15; *see also* Greiss Supp. Decl. ¶ 5. The Secretary not only expressly accused Liberty of violating these provisions, but threatened to fine Liberty for doing so unless it ceased its political expression. *See* Compl. Exh. 2, at 1 (Threatening Letter); *cf. Bigelow v. Virginia*, 421 U.S. 809, 816-17 (1975). Liberty contends, among other things, the challenged provisions are facially unconstitutional because they prohibit Liberty's pure political speech under viewpoint-based and content-based discrimination. *See* Compl., Counts I-IV, VII-VIII. Liberty has standing to pursue these facial challenges to avoid the risk of burdensome administrative proceedings, civil fines, public embarrassment, and potentially criminal referrals for engaging in constitutionally protected activity. *See Driehaus*, 573 U.S. at 153, 168.

### B. Liberty's Claims are Not Moot

**1. Voluntary Cessation**—In a desperate attempt to preserve as much of the facially unconstitutional statutes as possible, the Secretary contends she "does not oppose the issuance of a preliminary junction [sic] that applies narrowly and specifically to the facts of this case." Def. Opp. at 4. She further notes she "does not intend to commence any kind of enforcement action against [Liberty] pending the final disposition of these proceedings," and she has instructed

Mr. Casa (who signed the threatening letter) "to stand down." *Id*. at 4-5 & n.1. No mention is made of Compliance Investigator Sandra A. Edwards, who sent the follow-up e-mail after this lawsuit was filed demanding evidence that Liberty had acceded to the Secretary's threats and ceased its challenged political speech. *See* Exh. 1.

But more broadly, the Secretary's belated decision to only temporarily refrain from enforcing this provision against Liberty after expressly threatening Liberty with a fine and demanding Liberty cease its political speech is woefully insufficient to moot this controversy. "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). This is a "stringent" standard. *Id*.

The Ninth Circuit, sitting en banc, has held the repeal of a challenged statute can be enough to moot a case. *Bd. of Trs. of the Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (en banc) ("[W]e should presume that the repeal, amendment, or expiration of legislation will render an action challenging the legislation moot . . . ."). The Secretary's meager assurance of temporary and selective non-enforcement falls far short of such a rigorous standard.

In contrast, "an executive action that is not governed by any clear or codified procedures cannot moot a claim." *McCormack v. Herzog*, 788 F.3d 1017, 1025 (9th Cir. 2015). To the contrary, "a claim is not moot if the government remains practically and legally 'free to return to [its] old ways' despite abandoning them in the ongoing litigation." *Fikre v. FBI*, 904 F.3d 1033, 1049 (9th Cir. 2018) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)). "Even assuming [the Secretary] ha[s] no intention to alter or abandon" her newly adopted (yet still disturbingly unsettled) approach toward the challenged provisions, "the ease with which [she] could do so counsels against a finding of mootness." *Bell v. City of Boise*, 709 F.3d 890, 900 (9th Cir. 2013). This case is similar to *City of Los Angeles v. Barr*, 941 F.3d 931, 938 n.7 (9th Cir. 2019), in which the Ninth Circuit held, "Although DOJ has stated that it will not enforce the notice and access restrictions while this litigation is pending, . . . such temporary restraint does not amount to a voluntary cessation of DOJ's enforcement of the challenged conditions." The same is true here: the Secretary's unilateral decision, in the midst of ongoing litigation, to reverse course and

cease enforcing the law she had been enthusiastically wielding like a cudgel only days before is not the type of permanent and irrevocable action sufficient to moot a case. And, in any event, the Secretary's intent to temporarily refrain from enforcing the law under certain circumstances would be insufficient to moot Plaintiffs' facial challenge to the statute.

**2.    Capable of Repetition, Yet Evading Review**—The Secretary also implies Liberty's claims may become moot, stating, "In the absence of an avowed intention to misrepresent some candidate's elective status in the future, [Liberty] cannot even explain how it might violate [the Reelect Prohibition] and [the Incumbency Prohibition] in the future." Def. Mem. at 4. Liberty, however, has expressly explained it intends to continue violating the Reelect Prohibition and Incumbency Prohibition in connection with this election, Greiss Decl. ¶¶ 14-15, and future elections involving candidates who do not meet the statutory criteria, Griess Supp. Decl. ¶ 5. And, in any event, this matter is clearly capable of repetition, yet evading review in the brief period between campaign season and Election Day. *See Honig v. Doe*, 484 U.S. 305, 318-19 & n.6. The Ninth Circuit has applied the "capable of repetition, yet evading review" exception very liberally in challenges to rules touching on the electoral process that may be mooted by the occurrence of an election. *See, e.g.*, *Human Life of Wash., Inc. v. Brumsickle*, 624 F.3d 990, 1002 (9th Cir. 2010) (collecting Supreme Court cases); *Barilla v. Ervin*, 866 F.2d 1514, 1521-22 (9th Cir. 1989). The court recognizes, "[T]he inherently brief duration of an election is almost invariably too short to enable full litigation on the merits." *Porter v. Jones*, 319 F.3d 483, 490 (9th Cir. 2003). Thus, the Secretary's attempt to moot this case neither undermines its justiciability nor impacts the propriety of injunctive relief to prevent another precipitous change of heart.

**III.    LIBERTY IS LIKELY TO PREVAIL ON THE MERITS OF ITS CLAIMS**

The Secretary wholly fails to contest any of Liberty's claims concerning the merits of this case. Accordingly, this Court should deem those arguments conceded. *See, e.g., Derrick Reaves v. Ketoro, Inc.*, No. 8:19-CV-01421-DOC-ADS, 2020 U.S. Dist. LEXIS 167926, at *22 (C.D. Cal. July 17, 2020) ("Courts in this district, and many others, have found that a failure to address an argument in opposition briefing constitutes a concession of that argument."); *see also Day v. D.C. Dep't of Cons. & Reg. Affs.*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter

an argument that the opposing party makes in a motion, the court may treat that argument has conceded.").

***First***, these provisions are invalid content-based restrictions that fail strict scrutiny because any interest the state may have in preventing voters from incorrectly believing someone to be an incumbent does not rise to the level of "compelling," and may be satisfied through far less burdensome means (such as making lists of incumbents publicly available, *see* Nevada Assembly, *Current Legislators*, https://www.leg.state.nv.us/App/Legislator/A/Assembly/). *See Susan B. Anthony List v. Driehaus*, 814 F.3d 466, 470 (6th Cir. 2016); *Care Comm. v. Arneson*, 766 F.3d 774, 787 (8th Cir. 2014); *Vanasco v. Schwartz*, 401 F. Supp. 87, 100 (S.D.N.Y. 1975) (three-judge court), *aff'd* 421 U.S. 1041 (1976); *Commonwealth v. Lucas*, 34 N.E.3d 1242, 1257 (Mass. 2015); *Rickert v. Pub. Disclosure Comm'n*, 168 P.3d 826 (Wash. 2007). Moreover, the Government may not bar political speech solely on the grounds it is false. *See United States v. Alvarez*, 567 U.S. 709, 718 (2012) (plurality op.); *Animal Legal Defense Fund v. Wasden*, 878 F.3d 1184, 1194-95 (9th Cir. 2018). Indeed, in *Magda v. Ohio Elections Commission*, 58 N.E.3d 1188, 1205 (Ohio Ct. App. 2016), the Ohio Court of Appeals invalidated a law materially indistinguishable from the challenged provisions here.

***Second***, these provisions also constitute invalid viewpoint-based discrimination because they restrict the content of political expression only when it "support[s] the election of a candidate." Nev. Rev. Stat. §§ 294A.330, 294A.340. Had Liberty's doorhangers instead opposed Dickman's election, stating "Do not re-elect Dickman," there would have been no statutory violation. Such viewpoint discrimination cannot survive strict scrutiny and is unconstitutional. *See Chaker v. Crogan*, 428 F.3d 1215, 1226 (9th Cir. 2005); *see also R.A.V. v. St. Paul*, 505 U.S. 377, 391-92 (1992).

***Finally***, as even the Secretary belatedly conceded, these laws are also patently unconstitutional as applied to the suppression of truthful political advocacy, such as Liberty's. *See Winter v. Wolnitzek*, 834 F.3d 681, 686, 693-94 (6th Cir. 2016).

Thus, Liberty can make a compellingly strong case of likely success on the merits of both its facial and as-applied challenges. The Secretary implicitly conceded to the former and expressly

did so to the latter. *See* Def. Mem. at 5 (conceding Liberty "can persuasively argue that [the Reelect Prohibition] is unconstitutional in its present application."). Particularly in the context of a First Amendment case involving pure political speech, such a compelling and undisputed showing of likelihood of success on the merits renders injunctive relief the appropriate remedy. *See Kroll v. Incline Vill. Gen. Improvement Dist.*, 598 F. Supp. 2d 1118 (D. Nev. 2009) ("A party seeking preliminary injunctive relief in a First Amendment context 'can establish irreparable injury sufficient to merit the grant of relief by demonstrating the existence of a colorable First Amendment claim.'" (quoting *Sammartano v. First Jud. Dist. Court*, 303 F.3d 959, 973 (9th Cir. 2002))); *accord Peck v. City of Las Vegas*, 2016 U.S. Dist. LEXIS 120603, at *7 n.18 (D. Nev. Sept. 6, 2016).

### IV. THIS COURT SHOULD ENTER A PRELIMINARY INJUNCTION COMPLETELY ENJOINING ENFORCEMENT OF THE REELECT PROHIBITION AND INCUMBENCY PROHIBITION

This Court should grant the preliminary injunction Liberty requested, barring the Secretary from enforcing the Reelect Prohibition and Incumbency Prohibition against anyone. The Secretary asks this Court to "narrowly tailor any preliminary injunction to the specific facts of this case." Def. Opp. at 4. She adds Nevada has a "sovereign interest[]" in having these laws remain in force. *Id*. Neither the Secretary nor the State of Nevada, of course, may claim any valid interest in enforcing unconstitutional laws. *See Good News Empl. Ass'n v. Hicks*, No. C03-3542, 2005 U.S. Dist. LEXIS 5270, at *24 (N.D. Cal. 2005) ("[I]f the policy or law is unconstitutional in some application, the state has no legitimate interest in enforcing it in that context."), *aff'd*, 223 F. App'x 734 (9th Cir. 2007); *see also KH Outdoor, LLC v. Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006); *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982) (holding the public has "no right to the unconstitutional application of state law").

The extent of injunctive relief is dictated by the extent of the constitutional violation. *Clement v. Cal. Dep't of Corr.*, 364 F.3d 1148, 1152 (9th Cir. 2004). And the Ninth Circuit has recognized that, where a legal provision is unconstitutional, statewide relief is appropriate. *See City & Cty. of San Francisco v. Barr*, 965 F.3d 753, 764 (9th Cir. 2020) (holding, in constitutional challenge to federal law, "the geographical reach of the relief should be limited to California");

1  *Clement*, 364 F.3d at 1152 ("Because the injunction is no broader than the constitutional violation, the district court properly entered a statewide injunction.").

This Court should protect First Amendment rights by granting Plaintiffs' request for a preliminary injunction against continued enforcement of the facially unconstitutional Reelect Prohibition and Incumbency Prohibition.

## CONCLUSION

This Court should not allow the Secretary to evade injunctive relief through her belated eleventh-hour maneuvers. As the Threatening Letter itself expressly demonstrates, at the time the Secretary threatened to fine Liberty for urging voters to "reelect" Dickman, the Secretary **knew** Dickman had previously held the very seat in the legislature for which she is running again. *See* Compl. Ex. 2 at 1 (Threatening Letter) ("Ms. Dickman **did hold the seat** for the 2015-2017 period; accordingly, she **does not** meet the qualifying standard that authorizes the terms [sic] usage . . . .") (emphasis added). And even after this lawsuit was filed, the Secretary demanded evidence that Liberty had buckled to her demand by suppressing its political speech. *See* Exh. 1 (e-mail from Sandra A. Edwards). This Court should enter an injunction enforcing the First Amendment and preserving freedom of pure political speech in Nevada elections. Let the people, not the Secretary, resolve political controversies and decide for themselves who to elect or reelect. For these reasons, Liberty respectfully requests this Court enter a preliminary injunction barring the Secretary from enforcing the Reelect Prohibition, Nev. Rev. Stat. § 294A.330, and Incumbency Prohibition, Nev. Rev. Stat. § 294A.340, against anyone.

DATED:  October 28, 2020                         THE O'MARA LAW FIRM, P.C.


                                                  /s/ David C. O'Mara
                                                 DAVID C. O'MARA, ESQ.

                                                 311 E. Liberty Street
                                                 Reno, NV 89501
                                                 Tel: 775.323.1321

Dan Backer\*
POLITICAL.LAW PLLC
441 N. Lee St., Suite 300
Alexandria, VA 22314
(202) 210-5431
dan@political.law

*Admitted Pro Hac Vice*

Shana Weir, Esq.
WEIR LAW GROUP
6220 Stevenson Way
Las Vegas, NV 89120
(702) 509-4567

*Counsel for Plaintiff Make Liberty Win*

## **CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of The O'Mara Law Firm, P.C. and on this date, the foregoing document was filed electronically *via* the Court's ECF system which provided notification of such filing to counsel of record for all parties.

Dated: October 28, 2020                                        /s/ Bryan Snyder
                                                                          BRYAN SNYDER

INDEX OF EXHIBITS

| Exh No. | Description | Pages |
|---|---|---|
| 1 | October 20, 2020 Email | 1 |