AARON D. FORD
  Attorney General
GREGORY L. ZUNINO, Bar No. 4805
  Deputy Solicitor General
State of Nevada
100 N. Carson Street
Carson City, Nevada 89701-4717
Tel: (775) 684-1100
E-mail:  gzunino@ag.nv.gov

*Attorneys for Barbara Cegavske*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| MAKE LIBERTY WIN,<br><br>                    Plaintiff,<br><br>vs.<br><br>BARBARA K. CEGAVSKE, in her official capacity as SECRETARY OF STATE OF NEVADA,<br><br>                    Defendant. | Case No.  3:20-cv-00592-RCJ-WGC<br><br>**NEVADA SECRETARY OF STATE'S MOTION FOR SUMMARY JUDGMENT** |

Pursuant to Fed. R. Civ. Proc. 56(a), Defendant Barbara K. Cegavske, in her capacity as Nevada Secretary of State (Secretary), by and through counsel, Aaron D. Ford, Attorney General, and Gregory L. Zunino, Deputy Solicitor General, hereby moves the Court for summary judgment in her favor on all eight counts set forth in Plaintiff's Verified Complaint (ECF No. 1).

DATED this 19th day of January, 2021.

AARON D. FORD
Attorney General

By:    *Gregory L. Zunino*
GREGORY L. ZUNINO
Deputy Solicitor General
gzunino@ag.nv.gov

*Attorneys for Barbara Cegavske*

**POINTS AND AUTHORITIES**

## I. INTRODUCTION

In 1989, the Nevada Legislature enacted a statute that prohibits a non-incumbent candidate and that candidate's supporters from using the word "reelect" in advertising materials that support the candidate's run for public office. Nev. Rev. Stat. § 294A.330 (hereinafter "section 330"). The Nevada Legislature simultaneously enacted a statute that instructs non-incumbent candidates and their supporters to refrain from using words other than "reelect" when those words "impl[y] that the candidate is the incumbent in office". Nev. Rev. Stat. § 294A.340 (hereinafter "section 340"). These two complementary statutes are narrowly tailored to advance Nevada's compelling interest in promoting ballot clarity and neutrality.

Generally, Nevada's ballot lists the candidates for each public office in alphabetical order under the heading for that office. Nev. Rev. Stat. § 293.267. The candidates' names must appear without textual indicators of any single candidate's status as an incumbent. Nev. Rev. Stat. §§ 293.267(2). Only when the incumbent and the challenger have the same first and last names are election officials permitted to print the ballot with an indicator of the incumbent's status as such. *See* Nev. Rev. Stat. § 293.2565(2)(b). Sections 330 and 340 reinforce these ballot neutrality rules as they pertain to the printing of ballots. Neither section 330 nor 340 prevents the challenger from truthfully communicating information to the voters about the challenger's prior experience in public office. To the contrary, these statutes merely prohibit false statements that the ballot itself cannot remedy due to Nevada's ballot neutrality rules.

Plaintiff argues that sections 330 and 340 are unconstitutional for a multitude of reasons. Some of these are difficult to comprehend. For example, Plaintiff argues that sections 330 and 340 prevent candidates and their supporters from using the word "reelect" and similar words in every conceivable context, even when they convey truthful information (ECF No. 1 at ¶¶ 127, 136 and 139). According to Plaintiff, sections 330 and 340 prohibit a candidate such as Jill Dickman and her supporters from saying:

(a) "Vote for Jill Dickman! Don't continue to reelect people who will raise taxes!"

(b) "Some politicians only care if you reelect them. Not Jill Dickman – she'll do what's right! Vote Dickman!"

(c) "Whenever you elect or reelect a candidate, it's important to consider their values. Vote Dickman!"

(d) "Dickman has promised to lower taxes—a commitment to which you can hold her when it comes time to reelect her two years from now!"

(e) "Vote for Jill Dickman now and continue to reelect her for years to come!"

(f) "You elected Jill Dickman once back in 2016. She's no longer in office. It's time to reelect her."

(g) "You can elect Dickman or reelect someone who will raise taxes. The choice is clear; vote Dickman!"

(ECF No. 1 at ¶¶ 127, 136 and 139).

The above examples conflict not only with the plain language of sections 330 and 340, but also with Plaintiff's contention that sections 330 and 340 discriminate against a speaker's viewpoint. On the one hand, Plaintiff argues that sections 330 and 340 apply to speech offered in support of a candidate, but not to speech made in opposition to a candidate, thus promoting "viewpoint-based discrimination" (ECF No. 1 at ¶¶ 70 and 84). On the other hand, Plaintiff argues that sections 330 and 340 apply to speech made in opposition to a candidate (ECF No. 1 at ¶¶ 127, 136 and 139). Both propositions cannot be true.   Either sections 330 and 340 apply only to statements made in support of a candidate, or they apply to statements expressing both support for, and opposition to a candidate. The language of sections 330 and 340 is straightforward:

**NRS 294A.330  Use of term "reelect" in campaign.**  A person shall not use the term "reelect" in any material, statement or publication supporting the election of a candidate unless the candidate:
    1.   Was elected to the identical office with the same district number, if any, in the most recent election to fill that office; and
    2.   Is serving and has served continuously in that office from the beginning of the term to which the candidate was elected.

**NRS 294A.340  Creating implication that candidate is incumbent.**  A person shall not use the name of a candidate in a way that implies that the candidate is the incumbent in office

in any material, statement or publication supporting the election of a candidate unless:

    1.  The candidate is qualified to use the term "reelect" pursuant to NRS 294A.330; or

    2.  The candidate:

        (a)  Was appointed to the identical office with the same district number, if any, after the most recent election to fill that office; and

        (b)  Is serving and has served continuously in that office since the date of appointment.

The text of sections 330 and 340 cannot reasonably be construed to apply to truthful political speech, not even under the loosest, most expansive possible reading. Properly construed, sections 330 and 340 address the situation where a candidate or the candidate's supporters falsely portray the candidate as an incumbent in office. Consequently, they serve Nevada's compelling interest in promoting ballot neutrality and minimizing voter confusion at the polls. They burden only false political speech about the identities of the candidates, and then only to the extent that the speech concerns a non-incumbent candidate's elective status.

Plaintiff argues that Nevada must permit its candidates to misrepresent their elective status, claiming to be incumbents when they are not. As Plaintiff acknowledges, this would give the Nevada Legislature an incentive to amend Nevada's election laws to allow the true incumbents in office to signal their incumbent status on the ballot (ECF No. 1 at ¶ 48). Plaintiff seemingly expresses a policy preference for just such an amendment, but that would simply trade one legislative policy choice for another without concrete justification. That Plaintiff expresses any policy preference at all underscores the abstract nature of this dispute. Nevada can either print identifying information on the ballot, or it can require candidates to truthfully communicate that information in their advertising materials. The choice between these two correlative policies should be a choice for the Nevada Legislature. The Nevada Legislature has chosen a policy of ballot neutrality that minimizes the risk of the state playing a role in tipping the scales in a candidate's favor or disfavor based on whether the candidate is an incumbent. At this point, given the enforcement boundaries that the Court has already described in its orders granting preliminary injunctive relief (ECF Nos. 20 and 21), Plaintiff cannot

explain how Plaintiff or anyone else is likely to be injured in the future by the judicious enforcement of sections 330 and 340.

Because this is now an abstract dispute over legislative policy, the Court should grant summary judgment for the Secretary on the ground that Plaintiff lacks standing.[1] Alternatively, the Court should grant summary judgment for the Secretary because sections 330 and 340 do not violate the First and Fourteenth Amendments to the U.S. Constitution.

## II.     SUMMARY OF CLAIMS AND UNDISPUTED FACTS

### A.     Counts 1 to 4 Allege Facial Challenges to Sections 330 and 340.

Plaintiff groups its allegations under eight separate headings, identified in the Verified Complaint as "Count One" through "Count Eight" (hereinafter identified by the numerals "1" through "8").  In Counts 1 and 2 of the Verified Complaint, Plaintiff argues that sections 330 and 340 are facially invalid because they discriminate against political speech based on its content (ECF No. 1 at 8–11).  Similarly, Plaintiff argues in Counts 3 and 4 that sections 330 and 340 are facially invalid because they discriminate against a speaker's viewpoint based upon the speaker's "support" for a candidate, as opposed to a speaker's opposition to a candidate (ECF No. 1 at 12–15).  Insofar as sections 330 and 340 discriminate against content and viewpoints, they discriminate only against false content and misinformed viewpoints.

The Court previously recognized in its Order granting in part and denying in part Plaintiff's motion for a preliminary injunction that Plaintiff's facial challenges to sections 330 and 340 based on content and viewpoint discrimination lacked merit (ECF No. 21 at 8–11).

---

[1] In response to Plaintiff's request for an emergency preliminary injunction (ECF No. 2), the Secretary raised the issue of standing (ECF No. 11 at 5-6) but did not brief it in significant detail given the expedited briefing schedule (ECF No. 3).  Although the Court summarily rejected the argument that Plaintiff lacks standing to maintain a facial challenge (ECF No. 21 at 5-6), the Court "possesses the inherent power to reconsider an interlocutory order for cause, so long as the court retains jurisdiction", LR 59–1.  It is requested that the Court reconsider the issue of standing based upon the additional points and authorities set forth herein.

**B.**      **Counts 5 and 6 Allege As-Applied Challenges to Sections 330 and 340.**

Counts 5 and 6 relate specifically to the facts of Jill Dickman's candidacy for the Nevada Assembly (ECF No. 1 at 15–19). As such, Counts 5 and 6 allege an as-applied constitutional challenge to each of sections 330 and 340.  The relevant facts pertaining to Counts 5 and 6 are undisputed (*see* ECF No. 21).

Plaintiff is a political committee that makes independent expenditures in support of candidates for election and reelection to public office (ECF No. 1 at ¶¶ 3, 5, 6, 7 and 8). Plaintiff supported Jill Dickman's 2020 bid to be elected for a second time to the Nevada Assembly (*Id.*). Dickman had previously served in the Nevada Assembly but was not serving in the Nevada Assembly during her 2020 election campaign (ECF No. 1 at ¶¶ 6 and 12). During Dickman's campaign against incumbent Skip Daly, Plaintiff disseminated door hangers that encouraged voters to "RE-ELECT JILL DICKMAN FOR STATE ASSEMBLY" (ECF No. 1 at ¶ 11).

When the Secretary sent a letter to Plaintiff directing Plaintiff to stop disseminating the door hangers, Plaintiff sued (ECF No. 1). Without opposition from the Secretary, the Court issued a preliminary injunction preventing enforcement of sections 330 and 340 as they applied to the candidacy of Jill Dickman (ECF No. 20).  As discussed in greater detail below, Counts 5 and 6 are moot because Jill Dickman prevailed in the 2020 general election and is no longer a candidate whose supporters are subject to the provisions of sections 330 and 340.

**C.**      **Counts 7 and 8 Allege That Sections 330 and 340 are Overbroad and Vague.**

In addition to alleging that sections 330 and 340 are unconstitutional as applied to the candidacy of Jill Dickman (and to analogous situations involving candidates who are former elected officials), Plaintiff challenges sections 330 and 340 on the ground that they are unconstitutional in every conceivable application. Regarding section 330 specifically, Count 7 alleges that the statute is not narrowly tailored to address false or misleading claims of incumbency (ECF No. 1 at 19–21).  This conflicts with the text of the statute.  As

1   to section 340, Count 8 alleges that the statute is vague and thus difficult to understand
2   (*Id.* at 21–22).  This too conflicts with the text of the statute.

3       Together with Counts 1 through 4, Counts 7 and 8 set forth a catalogue of legal
4   theories borrowed from First Amendment jurisprudence. Collectively, the claims present
5   a facial challenge that does not relate specifically to the facts surrounding Jill Dickman's
6   candidacy or to any other factual allegations concerning past, current or imminent future
7   events.   The facial challenge is without merit.[2]   As noted above, Plaintiff's as-applied
8   challenge is moot as it concerns Jill Dickman and her 2020 candidacy for a seat in the
9   Nevada Assembly. To the extent that Plaintiff challenges sections 330 and 340 on behalf
10  of persons who may be similarly situated to Jill Dickman at some point in the future,
11  Plaintiff's as-applied challenge is also without merit.  Because sections 330 and 340 suffer
12  from no constitutional infirmities, the Court should grant summary judgment in favor of
13  the Secretary on all claims.

14  **III.   STANDARDS OF REVIEW**

15      **A.   The Standard for Evaluating Standing to Maintain a Facial Challenge.**

16      Whether Plaintiff has standing is distinct from the merits of Plaintiff's claims.
17  *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011). Standing is a question of
18  jurisdiction that precedes analysis of the merits. *Id.* (citing *Equity Lifestyle Props., Inc. v.*
19  *Cty. of San Luis Obispo,* 548 F.3d 1184, 1189 n.10 (9th Cir. 2008)). As discussed in greater
20  detail below, Plaintiff does not have standing to maintain a facial challenge to sections
21  330 and 340 because Plaintiff cannot satisfactorily frame the issues in this case.  "[T]here
22  must be a realistic danger that the statute itself will significantly compromise
23  recognized First Amendment protections of parties not before the Court for it to
24  be facially challenged on overbreadth grounds."  *Members of City Council of City of Los*
25  *Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984).

26

27      [2] With respect to the as-applied challenge, Plaintiff alleged that it was not afforded
28  administrative due process prior to the issuance of a cease-and-desist letter threatening
    Plaintiff with the imposition of a fine (ECF No. 1 at ¶¶ 22, 25–27).  Any such due process
    violation was remedied by the Court's issuance of a preliminary injunction (ECF No. 20).

Apart from the facts surrounding Plaintiff's as-applied challenge, Plaintiff cannot explain what kind of factual scenario might lead to the unconstitutional enforcement or application of sections 330 and 340. Plaintiff's hypotheticals (ECF No. 1 at ¶ 127) do not align with the legislative intent as expressed in sections 330 and 340 because they parse the language of the statutes in a way that promotes disharmony between the two.

When evaluating the meaning of a statute, "a reviewing court should not confine itself to examining a particular statutory provision in isolation." *Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000). Section 340 applies only to situations where the use of a word implies incumbency. Further, section 340 contains a cross-reference to section 330, *see* Nev. Rev. Stat. § 294A.340(1), indicating that use of the term "reelect" is to be construed according to the same standard, *see* Nev. Rev. Stat. § 294A.330. Given that they were enacted during the same legislative session, sections 330 and 340 are properly construed as "a symmetrical and coherent regulatory scheme." *Id.* at 133 (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569 (1995)).

When sections 330 and 340 are harmonized as required by canons of statutory construction, Plaintiff's hypotheticals do not fall within the narrow scope of either statute. Accordingly, Plaintiff has failed to demonstrate its standing to bring a facial challenge on behalf of persons not before the Court. Insofar as Plaintiff seeks to represent the interests of candidates who may be similarly situated to Jill Dickman, Plaintiff's claim is properly characterized as an as-applied challenge to sections 330 and 340, not a facial challenge.

**B.     The Standard for Evaluating Motions for Summary Judgment.**

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Here, the facts are undisputed. The questions presented are whether sections 330 and 340 are facially unconstitutional and/or whether Plaintiff's as-applied challenge is moot. These are questions of law. *Southern Oregon Barter Fair v. Jackson County, Oregon*, 372 F.3d 1128, 1133-34 (9th Cir. 2004) (whether statute is subject to facial attack is a question of law, as is question of mootness); *Bullfrog Films, Inc. v. Wick*, 847 F.2d

502, 505–06 (9th Cir.1988) (facial challenge to the constitutionality of a statute is ripe for resolution by summary judgment). Plaintiff's facial challenge is without merit and its as-applied challenge is moot.  Therefore, the Secretary is entitled to judgment as a matter of law.

## IV.    ARGUMENT

### A.    Plaintiff Does Not Have Standing to Maintain a Facial Challenge to Sections 330 and 340.

"A facial challenge to a legislative Act is . . . the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *U.S. v. Salerno*, 481 U.S. 739, 745 (1987). "Courts generally disfavor facial challenges to legislation, although this reluctance is somewhat relaxed in the First Amendment context." *Southern Oregon Barter Fair*, 372 F.3d at 1134. The standard for making a facial challenge is relaxed when a statute is alleged to be vague or overbroad. "The overbreadth doctrine confers standing on a party who demonstrates that a statute 'create[s] an unacceptable risk of the suppression of ideas' and that he has suffered an injury." *Eakins v. Nevada*, 219 F. Supp.2d 1113, 1115 (D. Nev. 2002) (quoting *Young v. Simi Valley,* 216 F.3d 807, 815 (9th Cir. 2000); *Nunez v. City of San Diego,* 114 F.3d 935, 949 (9th Cir. 1997)).

"Overbreadth standing is an exception to traditional standing and is premised upon preventing the self-censorship and chilling of expression of individuals not before the court." *Id.*  Here, Plaintiff claims to represent the interests of candidates who might in the future be disadvantaged by the enforcement of sections 330 and 340. However, when sections 330 and 340 are construed as a whole, they do not disadvantage candidates who truthfully convey information about their prior experience in office. Here, Plaintiff demands that Jill Dickman and persons similarly situated be permitted to use the word "reelect" despite the availability of more precise alternatives.  The class of persons whom Plaintiff claims to represent are persons similarly situated to Jill Dickman.  Plaintiff fails to describe a class that encompasses a larger and more diverse group of potential

candidates and supporters. Insofar as there is no articulable factual basis for distinguishing Plaintiff's facial challenge, Plaintiff's supposed facial challenge is identical in scope to its as-applied challenge.

Overbreadth standing for a First Amendment claim requires that (1) the plaintiff has suffered "an injury in fact which is 'actual, concrete, and particularized'"; (2) the injury in fact is "fairly . . . trace[able] to the challenged action of the defendant'"; (3) it is likely "that the injury will be 'redressed by a favorable decision'"; and (4) the plaintiff "can satisfactorily frame the issues on behalf of" non-parties. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations omitted); *Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 891 (9th Cir. 2007) (citations omitted). While Plaintiff established an injury related to its support of Jill Dickman, the injury was traceable to procedural anomalies in the manner of enforcing sections 330 and 340. (ECF No. 1 at ¶¶ 22, 25, 26, 27, 98 and 112). Plaintiff has not described a potential injury that is traceable to the substance of sections 330 and 340, as opposed to their application under facts and circumstances analogous to those described in Counts 5 and 6 of the Verified Complaint. As stated in Count 7, Plaintiff's overbreadth challenge seeks to nullify sections 330 and 340 because of their substance, as opposed to their application. To establish standing, Plaintiff must do more than conjure hypotheticals to which sections 330 and 340 have no conceivable application (*Id.* at ¶ 127). Plaintiff must develop hypotheticals that have real-world potential to fall within the scope of sections 330 and 340. Having failed to do so, Plaintiff demonstrates no ability to satisfactorily frame the issues relevant to its overbreadth challenge.

The same is true of the Plaintiff's claim that section 340 is unconstitutionally vague. "[W]here the effect of a vague statute would infringe upon a party's First Amendment rights, standing requirements to challenge the statute under the Fourteenth Amendment Due Process Clause are broader than they otherwise might be." *Arce v. Douglas*, 793 F.3d 968, 987 (9th Cir. 2015) (citing *See Hynes v. Mayor & Council of Borough of Oradell,* 425 U.S. 610 (1976); *Maldonado v. Morales,* 556 F.3d 1037 (9th Cir.

2009).  As a preliminary matter, however, Plaintiff must demonstrate that section 340 is vague. "A statute is impermissibly vague if it 'fails to provide a reasonable opportunity to know what conduct is prohibited, or is so indefinite as to allow arbitrary and discriminatory enforcement.'" *Id.,* (quoting *United States v. Mincoff,* 574 F.3d 1186, 1201 (9th Cir. 2009)).  Subsection 2 of section 340 applies specifically to political contests in which candidates misrepresent themselves as an appointed incumbent. Nev. Rev. Stat. § 294A.340(2).  To the extent that section 340 applies more broadly to political contests involving candidates who misrepresent themselves as elected incumbents, subsection 1 of section 340 merely refers the reader back to section 330.  Nev. Rev. Stat. § 294A.340(1).

Insofar as sections 330 and 340 prohibit the candidates in any contest from falsely portraying themselves as incumbents, they are adequately pointed in terms of putting candidates on notice of exactly what is prohibited.  Clearly, these statutes prohibit a challenger from encouraging voters to "reelect" or "return" the challenger to an office not previously held. *See* Nev. Rev. Stat. §§ 294A.330; 294A.340(1). They do not, however, prohibit the challenger from encouraging voters to "return" her to an office that she had previously held.  Under these facts and circumstances, the challenger's use of the word "return" does not equate to "reelect" and does not "imply" incumbency, such that it does not run afoul of either section 330 or section 340. *See id.*

Aside from the facts surrounding Plaintiff's as-applied challenge as stated in Counts 5 and 6, Plaintiff cannot articulate a scenario in which sections 330 and 340 fail to pass constitutional muster. Instead, Plaintiff constructs a series of hypothetical situations to which sections 330 and 340 do not apply (ECF No. 1 at ¶ 127). Plaintiff has demonstrated no ability to satisfactorily frame the issues in this case as they relate to Plaintiff's facial challenge.  Consequently, Plaintiff has failed to demonstrate standing to maintain a facial challenge to sections 330 and 340.

**B.    Section 340 Contains No Ambiguity.**

Plaintiff claims that section 340 forbids the use of the term "reelect" in campaign and advertising materials in any election where at least one candidate is not a direct

incumbent. According to principles of statutory construction, Plaintiff's reading of the statute is incorrect because it improperly assumes that sections 330 and 340 are redundant rather than complementary. "It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *Brown & Williamson Tobacco Corp.*, 529 U.S. at 133 (quoting *Davis v. Michigan Dept. of Treasury,* 489 U.S. 803, 809 (1989)). As noted above, section 340 contains a cross-reference to section 330. The cross-reference indicates that they are to be construed in *pari materia. Fed. Trade Comm'n v. AMG Capital Mgmt., LLC*, 910 F.3d 417, 433 n.2 (9th Cir. 2018) (O'Scannlain, J., concurring) (citing *Wachovia Bank v. Schmidt*, 546 U.S. 303, 315 (2006)). Under that doctrine, related statutes should be construed as complementary, not redundant. *See Erlenbaugh v. United States*, 409 U.S. 239, 243 (1972) (quotations and citation omitted).

Clearly, sections 330 and 340 are not redundant. As it applies to situations covered by section 330, subsection 1 of section 340 merely refers the reader back to section 330. Subsection 2 of section 340 is the operative provision. Subsection 2 states, "A person shall not use the name of a candidate in a way that implies that the candidate is the incumbent in office . . . unless . . . [t]he candidate . . . [w]as **appointed** to the identical office with the same district number, if any, after the most recent election to fill that office[ ] and . . . [i]s serving and has served continuously in that office since the date of **appointment**." Nev. Rev. Stat. § 294A.340(2) (emphasis added). By its terms, subsection 2 applies to political contests in which the challenger says things to cause voters to believe that he or she is the appointed incumbent in office.

By contrast, subsection 1 states, "A person shall not use the name of a candidate in a way that implies that the candidate is the incumbent in office . . . unless . . . [t]he candidate is qualified to use the term 'reelect' pursuant to NRS 294A.330." Nev. Rev. Stat. § 294A.340(1). According to its plain language, subsection 1 of section 340 prohibits a person from using terms other than "reelect" when the use of those terms would violate the provisions of section 330. However, subsection 1 qualifies its prohibition to the extent

1   that the person's use of such terms must "imply" incumbency in order to be subject to the

2   prohibition. *Id.*

3       Whether words imply incumbency is fact specific. For example, if a candidate who

4   previously held an office encourages voters to "return" her to that office, her use of the

5   word "return" does not imply incumbency.[3]  To the contrary, it implies that the candidate

6   held the office during a stretch that preceded the incumbent's current term in office. As

7   such, use of the word "return" does not violate the provisions of section 330 or 340 because

8   it is truthful speech. Sections 330 and 340 cannot reasonably be construed to prohibit

9   truthful political speech.  Not only would this be incompatible with the text of the two

10  statutes, but it would render them unconstitutional in violation of the canon of statutory

11  construction that favors a constitutional interpretation over an unconstitutional

12  interpretation.  "[W]hen deciding which of two plausible statutory constructions to adopt,

13  a court must consider the necessary consequences of its choice. If one of them would raise

14  a multitude of constitutional problems, the other should prevail—whether or not

15  those constitutional problems pertain to the particular litigant before the Court". *Clark v.*

16  *Martinez*, 543 U.S. 371, 380-81 (2005).

17      **C.   Sections 330 and 340 Are Pointed, Not Overbroad.**

18      When considered as a whole, sections 330 and 340 target false representations

19  concerning a candidate's status as an incumbent in office. Contrary to Plaintiff's

20  assertions (ECF No. 1 at ¶ 127), they do not generically target the use of the word

21  "reelect" (or a similar word) when used by a non-incumbent candidate.  This is a specious

22  argument that ignores the meaning of the word "reelect" as it appears in context. Section

23  330 prohibits the use of the word "reelect" when it is used in an election contest where

24  another person held an office more recently in time than any potential candidate who may

25  have previously held that office. It does not preclude a candidate from using other terms

26  to communicate a prior stretch in that office. Nor does section 340 preclude the use of

27  _____

28      [3] While Plaintiff used the term "reelect" in its advertising materials, Plaintiff also stated that Dickman was a "former assemblywoman".  Considered in context, Plaintiff's use of the term "reelect" did not imply incumbency.

-13-

1   such terms. Together, sections 330 and 340 discourage the use of terms that conflate the

2   identities of the candidates.

3           In other words, if a challenger's objective is to foster confusion about the identity of

4   the candidate who holds office by virtue of an appointment, the challenger would have

5   greater incentive to encourage voters to "return" him to that office, thus implying that the

6   challenger was the beneficiary of the appointment. This is the scenario that subsection 2

7   of section 340 addresses. Conversely, if a similar challenge is designed to unseat an

8   elected incumbent, the challenger has a greater incentive to encourage voters to "reelect"

9   her to that office. This is the scenario that section 330 addresses. Neither section 330 nor

10  section 340 prohibits a candidate such as Jill Dickman from encouraging voters to

11  "return" her to an office that she previously held.[4]

12          In other words, when an incumbent holds an office that was previously held by the

13  challenger, neither section 330 nor 340 prohibits the challenger from encouraging voters

14  to "return" her to that office. This would be a truthful statement that section 340 does not

15  prohibit. Section 340's prohibition is inapplicable in this situation because the

16  challenger's statement does not "imply" that the challenger currently holds the office.

17  Under these facts and circumstances, a statement encouraging voters to "return" the

18  challenger to office communicates that the challenger served a term in office that

19  preceded the incumbent's current term in office. Likewise, the statement does not violate

20  section 330 because it does not involve use of the term "reelect".

21          By their terms, sections 330 and 340 work in tandem to discourage political

22  advocacy that is specifically intended to foster voter confusion about the identity of the

23  incumbent. They are pointed, and apart from rare instances like in the case of Dickman,

24  they promote voter clarity and are thus not substantially overbroad. *See Virginia v.*

25  *Hicks*, 539 U.S. 113 (2003) ("The overbreadth claimant bears the burden of

26  ─────────────────

27          [4] The Secretary's compliance staff incorrectly invoked section 340 as a basis for its
    administrative action against Plaintiff.  Dickman's candidacy was not the topic of any
    campaign materials that used a term other than "reelect" in support of her candidacy. *See*

28  Nev. Rev. Stat. § 294A.340(1).  Section 330 was the only applicable provision.  *See* Nev.
    Rev. Stat. § 294A.330.

1   demonstrating, 'from the text of [the law] and from actual fact,' that substantial

2   overbreadth exists." (citation omitted)).  In summary, these statutes are narrowly tailored

3   to discourage false statements made for material gain that undermine Nevada's rules for

4   achieving ballot clarity and neutrality. *See* Nev. Rev. Stat. §§ 293.256-.2693. Properly

5   construed, sections 330 and 340 do not run afoul of the First Amendment because they

6   promote ballot clarity and neutrality while imposing no burden upon a candidate's ability

7   to truthfully communicate information about the candidate's prior experience in public

8   office.  In short, they are neither overbroad nor vague, and, as the Court has held, they

9   serve the State's compelling interest in avoiding voter confusion at the polls (ECF No. 21

10  at 10–11).

11       **D.    Enforcement of Sections 330 and 340 Does Not Violate the Free
12              Speech Clause.**

13       As the Court previously observed (ECF No. 21 at 8-10), sections 330 and 340 do

14  not impose conditions upon the time, place and manner of speech.  Consequently, they are

15  not subject to the standard that would apply if they were time-place-manner restrictions.

16  *See, e.g., Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989) ("[W]e reaffirm today

17  that a regulation of the time, place, or manner of protected speech must be narrowly

18  tailored to serve the government's legitimate, content-neutral interests but that it need

19  not be the least restrictive or least intrusive means of doing so.").  Since sections 330 and

20  340 are a content and viewpoint-based limitation on speech, albeit narrow in scope, these

21  statutes would be subject to strict scrutiny in any context other than the election context.

22  *See Reed v. Town of Gilbert, Arizona*, 576 U.S. 155, 162 (2015).

23       However, the federal courts have historically been deferential to the states' interest

24  in regulating the conduct and administration of elections. "[A]s a practical matter, there

25  must be a substantial regulation of elections if they are to be fair and honest and if some

26  sort of order, rather than chaos, is to accompany the democratic processes." *Short v.*

27  *Brown*, 893 F.3d 671, 676 (9th Cir. 2018) (quoting *Storer v. Brown*, 415 U.S. 724, 730

28  (1974)).  Therefore, a court faced with a constitutional challenge to a state election law

must "consider the character and magnitude of the asserted injury to the rights . . . that the plaintiff seeks to vindicate." *Id.* This is a factual question on which Plaintiff bears the burden of proof. *See Democratic Party of Haw. v. Nago*, 833 F.3d 1119, 1122–24 (9th Cir. 2016). When an election law burdens rights guaranteed by the First and Fourteenth Amendments, the state's interests must be "sufficiently weighty to justify the limitation, and there must be a means-ends fit between the state's proffered justification and the rule employed." *Short*, 893 F.3d at 676–77. Strict scrutiny applies only when the burden is severe. *Id.* at 677.

Stated differently, "when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon rights guaranteed by the First and Fourteenth Amendments, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick v. Takushi*, 504 U.S. 428, 433–34 (1992). This is especially true when the states enact measures or take actions designed to minimize ballot confusion. As discussed above, sections 330 and 340 are designed to prevent a non-incumbent candidate from conflating his or her identity with that of an incumbent candidate. Sections 330 and 340 are narrowly tailored to complement Nevada's ballot neutrality rules, thus ensuring that voters have the means to accurately distinguish between the challenger and the incumbent. *See* Nev. Rev. Stat. § 293.267.

Sections 330 and 340 are necessary because the Nevada Legislature has made a policy decision to adopt ballots that draw no distinctions between challengers and incumbents. This legislative policy decision recognizes that voters should rely upon the candidates themselves for information about their prior experience in public office. Sections 330 and 340 do not limit the candidates' ability to convey such information by whatever means they choose. However, candidates cannot make false representations about their elective status in situations where an incumbency designation would properly appear on the ballot but for Nevada's ballot neutrality rules. Sections 330 and 340 serve as a substitute for an incumbency designation on the ballot. Consequently, Nevada has a compelling interest in preventing non-incumbent candidates from falsely portraying

1   themselves as incumbents, thereby creating ballot confusion for which there is no remedy
2   at the polls.

3   Like its forty-nine counterparts, Nevada has broad authority to regulate elections.
4   *See* U.S. Const. Art. I, § 4, cl. 1; *Tashjian v. Republican Party of Connecticut*, 479 U.S.
5   208, 217 (1986) ("[T]he Constitution grants to the States a broad power to prescribe the
6   'Times, Places and Manner of holding Elections for Senators and Representatives,' which
7   power is matched by state control over the election process for state offices." (quoting U.S.
8   Const. Art. I, § 4, cl. 1)); *New York State Democratic Party v. Lomenzo*, 460 F.2d 250, 251
9   (2d Cir. 1972) ("States have broad authority, absent valid congressional legislation, to
10   establish rules regulating the manner of conducting both primary and final elections.").
11   Such comprehensive authority necessarily encompasses the ability to "decide what name,
12   designation, and other information appears on the ballot, provided no unconstitutional
13   objective is facilitated thereby." *Lomenzo*, 460 F.2d at 251 (citations omitted).

14   "When deciding whether a state election law violates First and Fourteenth
15   Amendment speech rights, courts are to 'weigh the character and magnitude of the
16   burden the State's rule imposes on those rights against the interests the State contends
17   justify that burden, and consider the extent to which the State's concerns make the
18   burden necessary.'" *Rubin v. City of Santa Monica*, 308 F.3d 1008, 1014 (9th Cir.
19   2002) (quoting *Timmons v. Twin Cities Area New Party,* 520 U.S. 351, 358 (1997); *Burdick
20   v. Takushi,* 504 U.S. 428, 434, (1992)). Sections 330 and 340 impose a minimal burden on
21   political speech. Although a candidate may not misrepresent his or her elective status
22   under specified circumstances, he or she is free to otherwise communicate false or
23   misleading information, not to mention truthful information, about his or her prior
24   experience in public office. The character and the magnitude of the burden on false speech
25   pales in comparison to Nevada's interest in minimizing ballot confusion and promoting
26   ballot integrity.

27   As the ballot is an instrument for voting, not a forum for political expression, *see*
28   *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 461 (2008) (Roberts,

-17-

C.J., concurring) ("the State controls the content of the ballot, which we have never considered a public forum"), "[t]he First Amendment does not provide candidates with a right to have their political parties listed on election ballots." *McMillan v. N.Y. State Bd. of Elections*, No. 10-CV-2502 JG VVP, 2010 WL 4065434, at *10 (E.D.N.Y. Oct. 15, 2010), *aff'd*, 449 F. App'x 79 (2d Cir. 2011) (citing *Timmons*, 520 U.S. at 362-63; *Dart v. Brown*, 717 F.2d 1491, 1499 (5th Cir. 1983)). This rationale applies equally to incumbency designations. *See Rubin*, 308 F.3d at 1014 ("A restriction is particularly unlikely to be considered severe when a candidate is given other means of disseminating the desired information."). The Nevada Legislature has no obligation to permit candidates to print incumbency designations on the ballot. Conversely, it has no obligation to permit candidates to misrepresent their elective status in their communications with voters.

As sections 330 and 340 are "generally applicable, even-handed, politically neutral, and . . . protect the reliability and integrity of the election process," they do not impose a severe burden on Plaintiff, the candidates whom Plaintiff chooses to support, or others similarly situated. *Id.* Nevada's compelling interest in preventing ballot confusion is more than adequate to justify the minimal burden that sections 330 and 340 impose upon untruthful statements about a candidate's elective status. *See Timmons*, 520 U.S. at 358–59 (noting that election laws that place non-severe burdens on First Amendment rights "trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions" (internal quotations omitted)). Sections 330 and 340 are justifiable for the additional reason that they apply only in situations where the candidate making the false statement does so for material gain (ECF No. 21 at 8). *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1194 (9th Cir. 2018). Therefore, sections 330 and 340 do not violate the Free Speech Clause of the First Amendment.

**E.    Counts 5 and 6 are Moot**.

Article III, § 2 of the U.S. Constitution sets forth a jurisdictional limitation upon the power of the federal courts to hear matters other than "Cases" and "Controversies".

*See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992); *Deakins v. Monaghan*, 484 U.S. 193, 199 (1988). More specifically, it denies federal courts the power "to decide questions that cannot affect the rights of litigants in the case before them." *Paher v. Cegavske*, Case N. 3:20-cv-00243, 2020 WL 4431567, *3 (D. Nev. July 31, 2020) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).

A federal court may exercise jurisdiction only when litigants have suffered or are "threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Id.* (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)). Accordingly, a federal court may not adjudicate disputes that have been rendered moot by the passage of time and/or superseding events. *North Carolina*, 404 U.S. at 246. (explaining that courts are not empowered as a matter of jurisdiction to decide moot questions). "[I]t is not enough that a dispute was very much alive when suit was filed . . . [t]he parties must continue to have a 'personal stake in the outcome' of the lawsuit." *Id.* at 477–78 (internal quotations and citations omitted).

Counts 5 and 6 are moot because Jill Dickman prevailed in the 2020 general election and is no longer a candidate whose supporters are subject to the provisions of sections 330 and 340. In fact, Dickman's 2020 candidacy was never subject to the provisions of section 340 because her advertising materials used the word "reelect" and not some other word that implied incumbency. *See* Nev. Rev. Stat. § 294A.340. Furthermore, the Secretary declined to contest the as-applied challenges when they were first addressed by the Court, effectively waiving any right to pursue a post-election fine or disciplinary action pursuant to Nev. Rev. Stat. § 294A.420(2).

Such a waiver results from the application of the doctrine of issue preclusion, which prevents a party to a lawsuit from relitigating an issue that was decided in a prior judicial proceeding involving the same parties. *See Chachas v. City of Ely*, 615 F. Supp. 1193, 1201 (D. Nev. 2009) ("Issue preclusion is implicated where one or more parties to an earlier suit are involved in later litigation on a different claim."). Having enjoined the enforcement of the statutes as applied to the candidacy of Jill Dickman, this Court

1    rendered moot Plaintiffs' claims as alleged in Counts 5 and 6 of the Verified Complaint

2    (ECF No. 21).

3         To the extent that Plaintiff purports to represent candidates similarly situated to

4    Jill Dickman, or persons who may wish to support such candidates in the future,

5    Plaintiff's facial challenge (as stated in Counts 1 through 4, 7 and 8) serves that purpose.

6    As discussed above, Plaintiff's facial challenge to sections 330 and 340 is without merit.

7    Sections 330 and 340 do not impose a significant burden upon speech, and they are

8    narrowly tailored to promote a compelling governmental interest.

9    **V.    CONCLUSION**

10        At its inception, this case was characterized by a unique set of facts.  Plaintiff made

11   statements in support of Jill Dickman's 2020 candidacy for the Nevada Assembly.

12   Considered as a whole, Plaintiffs' statements were truthful even though they appeared, at

13   first glance, to violate the provisions of Nev. Rev. Stat.§§ 294A.330 and .340. However,

14   when sections 330 and 340 are also considered as a whole, and enforced judiciously, they

15   do not run afoul of the Free Speech Clause of the First Amendment. The Court should

16   grant summary judgment in favor of the Secretary on all counts.

17        DATED this 19th day of January, 2021.

18                              AARON D. FORD
                               Attorney General
19

20                              By:    *Gregory L. Zunino*
                                      GREGORY L. ZUNINO
21                                    Deputy Solicitor General
                                      gzunino@ag.nv.gov
22
                                      *Attorneys for Barbara Cegavske*
23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the Office of the Attorney General, State of Nevada, and that on this 19th day of January, 2021, I filed and served with this Court's CM/ECF electronic filing system, **NEVADA SECRETARY OF STATE'S MOTION FOR SUMMARY JUDGMENT,** served listed below:

David O'Mara, Esq.
David@omaralaw.net

Dan Backer, Esq.
Political.Law PLLC
dan@political.law
*Pro Hac Vice*

*Attorneys for Plaintiffs*

_____
An employee of the Office
of the Attorney General