AARON D. FORD
 Attorney General
GREGORY L. ZUNINO, Bar No. 4805
 Deputy Solicitor General
State of Nevada
100 N. Carson Street
Carson City, Nevada 89701-4717
Tel: (775) 684-1100
E-mail:  gzunino@ag.nv.gov

*Attorneys for Barbara Cegavske*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MAKE LIBERTY WIN,<br><br>Plaintiff,<br><br>vs.<br><br>BARBARA K. CEGAVSKE, in her official capacity as SECRETARY OF STATE OF NEVADA,<br><br>Defendant. | Case No.  3:20-cv-00592-RCJ-WGC<br><br>**NEVADA SECRETARY OF STATE'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Defendant Barbara K. Cegavske, in her capacity as Nevada Secretary of State (Secretary), by and through counsel, Aaron D. Ford, Attorney General, and Gregory L. Zunino, Deputy Solicitor General, hereby opposes Plaintiff's Motion for Summary Judgment and Permanent Injunction (ECF Nos. 29 and 30 Corrected image) through her submission of the following points and authorities.

DATED this 9th day of February, 2021.

                                      AARON D. FORD
                                      Attorney General

                                      By:   *Gregory L. Zunino*
                                             GREGORY L. ZUNINO
                                           Deputy Solicitor General
                                           Nevada Bar No. 4805
                                           (775) 684-1237
                                           gzunino@ag.nv.gov

                                           *Attorneys for Barbara Cegavske*

**POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Plaintiff urges the Court to adopt the wrong standard for evaluating a First Amendment challenge to a statute that regulates elections. As the Court previously noted (ECF No. 21 at 11), the stolen valor case is inapposite. *See U.S. v. Alvarez*, 567 U.S. 709 (2012). As stated in the dissent, the holding of *Alvarez* "breaks sharply from a long line of cases recognizing that the right to free speech does not protect false factual statements that inflict real harm and serve no legitimate interest." *Id.* at 739 (Alito dissenting). In the context of election administration, false statements have the potential to inflict real harm and serve no legitimate purpose. Consequently, the focal point of the inquiry in election cases is not whether a challenged statute restricts the content or viewpoint expressed by a candidate for public office, but whether it burdens core political speech or otherwise imposes a severe burden upon free speech generally. Here, the minimal burden upon speech is heavily outweighed by Nevada's interest in protecting the integrity of the election process.

**II.    ARGUMENT**

    **A.     Plaintiff Urges the Court to Adopt the Wrong First Amendment Standard of Review.**

Plaintiff characterizes Nev. Rev. Stat. §§ 294A.330 ("section 330") and .340 ("section 340") as limitations upon the "content" and "viewpoint" of a candidate's political message (ECF No. 30 at 9-10). This is an oversimplification. Sections 330 and 340 are akin to disclosure requirements, such that their limitation on speech is subject to "exacting" scrutiny, not strict scrutiny. Exacting scrutiny in the electoral context requires that the strength of the governmental interest be evaluated in reference to the severity of the burden on speech. *John Doe No. 1 v. Reed*, 561 U.S. 186, 196 (2010). "The State's interest in preserving the integrity of the electoral process is undoubtedly important." *Id.* at 198. And here, the burden on speech is minimal. When a candidate chooses to make incumbency an issue in a political contest, sections 330 and 340 require only that the candidate truthfully disclose the candidate's previous tenure in the public office that he or she seeks. Truthful disclosure of basic identifying information about the candidate is all that sections 330 and 340 require. Sections 330 and 340 do not

burden core political speech, nor do they impose a severe burden upon any candidate's ability to truthfully communicate information about the candidate's prior term in office.

In *Citizens United v. Federal Election Com'n*, well known for its vigorous defense of corporate political speech, the U.S. Supreme Court upheld the disclosure requirements of the Bipartisan Campaign Reform Act of 2002 (BCRA), even though the Court struck down the BCRA's limitations on spending. *See* 588 U.S. 310, 366–67 (2010). Currently codified at 52 U.S.C. § 30104, the BCRA's disclosure requirements apply to Plaintiff and others who spend money in support of candidates for public office. Regarding disclosure requirements generally, the Court stated:

> Disclaimer and disclosure requirements may burden the ability to speak, but they impose no ceiling on campaign-related activities, and do not prevent anyone from speaking. The Court has subjected these requirements to "exacting scrutiny," which requires a "substantial relation" between the disclosure requirement and a "sufficiently important" governmental interest.

*Citizens United*, 588 U.S. at 366-67 (internal citations and quotations omitted).

As stated in *Citizens United*, the "exacting scrutiny" standard of review is consistent with the standard that the federal courts have applied in the election context generally. For example, in *Burdick v. Takushi*, the Court stated that the "rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." 504 U.S. 428, 434 (1992). The Court further observed that "severe" restrictions on political speech are subject to strict scrutiny, while less restrictive measures are subject to less rigorous review. *Id.*

"When strict scrutiny is applied to a law that burdens core political speech or that imposes severe burdens on plaintiff's rights, the law must be narrowly tailored to serve a compelling government interest." *Pest Committee v. Miller*, 626 F.3d 1097, 1107 (9th Cir. 2010) (citing *Buckley v. American Constitutional Law Foundation,* 525 U.S. 182, 207 (1999)). "But when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick*, 504 U.S. at 434 (quoting *Anderson v. Celebrezze,* 460 U.S. 780, 788 (1983)).

The Ninth Circuit has applied exacting scrutiny, not strict scrutiny, to electoral disclosure requirements. For example, in *Chula Vista Citizens for Jobs and Fair Competition v. Norris*, the Ninth Circuit considered a California law requiring the proponent of an initiative petition to disclose the proponent's name on each section of the petition that is circulated to voters for their signature. 782 F.3d 520, 524 (2015). The California requirement is qualitatively no different than Nevada's requirement that candidates truthfully disclose their elective status when they choose to make incumbency an issue. Sections 330 and 340 merely keep the electorate correctly informed about the identity of the challenger versus the identity of the incumbent. Sections 330 and 340 serve as a substitute for an incumbency designation on the ballot itself. *See* Nev. Rev. Stat. § 293.2565. This is a necessary substitute given the Nevada Legislature's decision to adopt a policy of ballot neutrality. *Id.*

Regarding the California disclosure requirement in *Norris*, the Court noted that California's election officials had cited "(1) an interest in the integrity of the electoral process, and (2) an informational interest." *Id.* at 538. The Court "conclude[d] that the former interest is sufficient in and of itself to justify the petition disclosure requirement." *Id. See also Pest Committee v. Miller*, 626 F.3d 1097, 1110 (9th Cir. 2010) (holding that "district court did not err in applying a flexible balancing test" in reviewing Nevada statutes authorizing pre-election challenges to initiative petitions). Here too, Nevada has an interest in the integrity of the electoral process. When balanced against the minimal burden on speech, Nevada's interest in electoral integrity is sufficient to justify sections 330 and 340.

The Court should apply exacting scrutiny, not strict scrutiny, in reviewing sections 330 and 340. Even if the Court applies strict scrutiny, as it did previously (ECF No. 21 at 11), the Court should once again conclude that sections 330 and 340 are facially constitutional. They are facially constitutional because they promote Nevada's compelling interest in keeping the electorate properly informed about the identities of the candidates. In the absence of sections 330 and 340, a non-incumbent candidate could easily portray himself or herself as the incumbent, thus misleading voters regardless of whether voters consider incumbency to be a positive or a negative quality.

While Plaintiff observes that incumbency may be a negative quality in the eyes of some voters (ECF No. 30 at 12), Plaintiff fails to explain how this makes the State's interest in election integrity less than compelling. In fact, diverse voter opinions on the desirability of reelecting an incumbent make the

State's interest all the more compelling. A candidate's status as an incumbent is important to different voters for different reasons. But it is important, nonetheless, as it bears upon the identity of each candidate. For this reason, sections 330 and 340 further the State's compelling interest in avoiding voter confusion at the polls.

### B. Plaintiff Minimizes Nevada's Compelling Interest in Election Integrity.

The business of politics is a billion-dollar industry. Critics argue that it is failing America. *See* Katherine M. Gehl and Michael E. Porter, *Why Competition in the Politics Industry is Failing America*, Harvard Business School (Sept. 2017).[1] Torrents of money flow to elected officials, candidates, consultants, managers, operatives, advertisers, media companies, pundits, lawyers, accountants, and others. As the industry increases in value, so too do the personal and financial incentives to win at any cost and monetize the trappings of victory. Amid the swirl of money and sharp rhetoric, voters find it increasingly difficult to separate fact from fiction. Against this backdrop, Plaintiff asserts a constitutional right to falsely portray a political challenger as an incumbent.

Plaintiff overreaches. While Plaintiff makes a reasonable argument that sections 330 and 340 are unconstitutional as applied to the candidacy of Jill Dickman, Plaintiff's facial challenge to sections 330 and 340 rings hollow. As to the candidacy of Jill Dickman, Plaintiff's argument is reasonable when Plaintiff's statements about her prior stretch in office are evaluated in their entirety. Considered in context, the statements accurately communicate Dickman's status as a former officeholder as opposed to a direct incumbent.

However, this is not to say that Plaintiff's use of the word "reelect" would have been plain-spoken had Plaintiff not included additional explanatory detail in its advertising materials. When used in isolation, "reelect" is misleading to the voters because it has a specific connotation. The word "reelect" connotes that the candidate for an office *currently* holds that office. *See* Nev. Rev. Stat. § 294A.330 (use of word "reelect" prohibited unless the candidate "[i]s serving and has served continuously in that office from the beginning of the term to which the candidate was elected"). Limiting a non-incumbent candidate's use of the term "reelect" is a narrowly-tailored means of distinguishing between direct incumbents and other candidates with prior experience in an office. This

---

[1] Available at https://www.hbs.edu/news/releases/Pages/why-competition-us-politics-industry-failing.aspx (last accessed on January 28, 2021).

distinction protects the integrity of Nevada's election process because it prevents a non-incumbent challenger from effectively assuming the identity of the incumbent.

Not surprisingly, Plaintiff minimizes Nevada's interest in protecting the integrity of the election process, arguing that the enforcement history of sections 330 and 340 demonstrates the absence of a problem (ECF No. 30 at 13-15). According to Plaintiff, the enforcement history of sections 330 and 340 shows that these statutes have rarely if ever been enforced against candidates who falsely portray themselves as incumbents (*Id.*). Plaintiff's argument misses the point.

The lack of a robust enforcement history reveals that sections 330 and 340 do not significantly burden political speech. Sections 330 and 340 do not significantly burden political speech because most candidates do not wish to falsely portray themselves as incumbents. From this perspective, it is immaterial whether Nevada has a significant problem with candidates who falsely portray themselves as incumbents. It is probable that Nevada does not have such a problem because sections 330 and 340, together with prevailing social and political norms, serve as a strong deterrent. In short, these statutes deter speech that is intended to confuse the voters by conflating the identities of the incumbent and the challenger. This is a good thing for voters even if it inconveniences the few dishonest political candidates who would misrepresent their elective status but for the statutory prohibition. *See Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 632–33 (1989) (holding that deterrent effect of drug and alcohol testing justified imposition upon the privacy rights of railroad employees).

When fairly covered by the media, counter speech also serves as a deterrent, and the Secretary, through counsel, has acknowledged as much (ECF No. 30 at 13). The combined deterrent effect of balanced media coverage and government regulation ensures free and fair elections. Given the vagaries of media coverage, a legal restriction on falsely portraying oneself as the incumbent is a small price to pay for free and fair elections.

Furthermore, there can be no dispute that Nevada has a compelling interest in protecting the integrity of its elections. "The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964). Sections 330 and 340 protect the right to vote by preventing candidates from supplying false information about their identities. As political contests

become increasingly rancorous in the modern political climate, the minimal burdens associated with sections 330 and 340 are easily justified, and Nevada's interest in retaining and enforcing these statutes is more important than ever.

In summary, sections 330 and 340 are constitutional when subjected to exacting scrutiny as well as strict scrutiny. These statutes do not prevent anyone from speaking. A candidate who previously served in a public office, but who is not currently serving in that office, may communicate the candidate's prior tenure in office by urging voters to "return" the candidate to the office. As explained in the Secretary's motion for summary judgment (ECF No. 28 at 11-13), such a communication would not violate either section 330 or section 340 because these statutes must be construed as a whole, not in isolation as Plaintiff argues. That such a candidate must use the word "return" instead of the word "reelect" is a minimal burden upon the candidate's speech.  By contrast, the State's interest in avoiding voter confusion at the polls is compelling.

### C.  **Plaintiff Confuses Administrative Due Process with First Amendment Analysis**.

Plaintiff argues that the Secretary has a history of enforcing sections 330 and 340 in cases where the challenger to an incumbent had previously held the office, or some comparable office, but was not then serving in the office (ECF No. 30 at 13-15).  According to Plaintiff, this enforcement history demonstrates that sections 330 and 340 burden truthful political speech.  To the contrary, sections 330 and 340 provide a non-incumbent challenger with adequate flexibility to communicate the challenger's prior experience to the voters without specifically using the term "reelect" in the challenger's campaign and advertising materials.  To the extent that compliance staff may have periodically failed in the past to recognize such flexibility in the statutes, their enforcement activities raise administrative due process concerns, not concerns about the constitutionality of the statutes themselves.

Generally, alleged violations of administrative due process must be resolved on a case-by-case basis.  The evaluation is fact specific because "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  By contrast, a facial challenge to a statute presents a question of law that must be resolved on the basis of the text of the statute.  "In determining whether a law is facially invalid, we must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases."

*Washington State Grange v. Washington State Republican Party*, 522 U.S. 442, 449-50 (2008) (quoting *United States v. Raines,* 362 U.S. 17, 22, (1960)). Plaintiff's discussion of enforcement history encourages the Court to speculate about the possibility that future enforcement action may target truthful political speech. Neither past nor possible future enforcement action is relevant to the question at hand—whether sections 330 and 340 are facially constitutional. As discussed above, sections 330 and 340 are facially constitutional because they impose only a minimal burden upon speech while promoting Nevada's compelling interest in protecting the integrity of elections.

### III.   CONCLUSION

Sections 330 and 340 are akin to a disclosure requirement. If a candidate chooses to make incumbency an issue in a race for public office, the candidate must truthfully disclose the candidate's elective status. This simple requirement dovetails with Nev. Rev. Stat. § 293.2565, Nevada's ballot neutrality statute. Nevada's ballot neutrality statute ensures that no candidate will be advantaged or disadvantaged by an incumbency designation on the ballot. *See id.* Together, Nev. Rev. Stat. §§ 294A.330, and .340, and Nev Rev. Stat. § 293.2565 promote election integrity and prevent voter confusion at the polls. The Court should deny Plaintiff's motion for summary judgment and grant the Secretary's motion for summary judgment.

DATED this 9th day of February, 2021.

                                     AARON D. FORD
                                     Attorney General

                                   By:     *Gregory L. Zunino*
                                                 GREGORY L. ZUNINO
                                                 Deputy Solicitor General
                                                 gzunino@ag.nv.gov

                                                 *Attorneys for Barbara Cegavske*

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the Office of the Attorney General, State of Nevada, and that on this 9th day of February, 2021, I filed and served with this Court's CM/ECF electronic filing system, **NEVADA SECRETARY OF STATE'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,** served listed below:

David O'Mara, Esq.
David@omaralaw.net

Dan Backer, Esq.
Political.Law PLLC
dan@political.law
*Pro Hac Vice*

*Attorneys for Plaintiffs*

_____
An employee of the Office
of the Attorney General